UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LOUIS ARCHIE ANDERSON | : | DOCKET NO.  2:10-cv-1462 |
| VS. | : | JUDGE MINALDI |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of supplemental security income benefits claimed under §§ 216(i) and 223 of the Social Security Act.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court finds that the Commissioner's decision should be VACATED and the matter REMANDED.

### PROCEDURAL HISTORY

On February 17, 2009, plaintiff filed an application for disability insurance benefits alleging disability beginning on February 11, 2009.  Tr. 77-83.  The claim was initially denied on May 5, 2009.  Tr. 38-40.  Following an administrative hearing held on February 25, 2010, where plaintiff appeared and testified the Administrative Law Judge (ALJ) issued an unfavorable decision dated April 5, 2010.  Tr.5-16.  In his decision the ALJ found plaintiff was not disabled because he retained the residual functional capacity to perform his past relevant job as a gaming

inspector. Tr. 13. The ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease (COPD), diabetes mellitus, hypertension, and obesity. Tr. 10. The ALJ found that plaintiff had the residual functional capacity (RFC) to perform a modified range of light work but must avoid exposure to fumes, odors, dusts, and gases and must work in a well ventilated area. Tr. 11. Based on the RFC, the ALJ found that plaintiff could return to his past work as a gaming inspector. Tr. 13.

Plaintiff filed a request for appellate review of this decision and on July 29, 2010, his request was denied. Tr. 1-4. On September 22, 2010, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## FACTS AND MEDICAL EVIDENCE

Plaintiff, age 54 at the time of his hearing [Tr. 22], graduated from high school, enlisted in the military and retired after twenty years. Tr. 29, 141. He attended college for three years following his military retirement. Tr. 24, 141. From 1996 to 2004, plaintiff worked in the casino industry as a gaming inspector, health inspecto, and food inspector. Tr. 24. From 2004 to February 11, 2009, (the date of his alleged onset of disability) he was employed as a site manager for the U.S. Army where he was responsible for processing soldiers who were preparing to deploy to Afghanistan and Iraq. Tr. 25, 141.

Prior to 2006 plaintiff testified that he was "healthy as a mule," he had "never been sick before." Tr. 29. In September of 2006 he was admitted to the hospital for a collapsed right lung (spontaneous pneumothorax) that was re-inflated by inserting a chest tube. Tr. 25, 187. In January 2007 his right lung collapsed again and he was admitted to the hospital and underwent surgery (right apical blebectomy). Tr. 25, 203. Plaintiff has been diagnosed with chronic

obstructive pulmonary disease (COPD) [Tr. 161], diabetes mellitus type 2 [Tr. 353], obstructive sleep apnea [Tr. 208,] obesity [Tr. 185], and hypertension [Tr. 183].

Plaintiff testified that he has no stamina and is tired and weak. He cannot walk a mile. Tr. 26, 31. He has to sleep in a sitting position because he cannot breathe if lying down flat. Tr. 31. He gets leg and back cramps when standing. Tr. 26. He stated that he cannot lift anything for an extended period of time and cannot sit for too long or drive long distances. Tr. 33. He stated that he can no longer mow his yard. Tr. 27. He testified that he gets anxious when he uses the computer. Tr. 29.

On a typical day plaintiff testified that he fixes breakfast for his two sons ages 10 and 15, drives them to school (approximately 3 to 5 miles), and tries to keep the house clean for his wife. Tr. 27. He stated that he mostly tries to relax as he was advised to do by his doctor because of an emboli in his left lung. Tr. 26, 27.

At an examination at the VA Hospital in Alexandria, Louisiana, in March 2006 revealed that plaintiff was first diagnosed with bullous emphysema in 1990. It was noted that his shortness of breath on exertion has progressively worsened since that time. Tr. 158. Plaintiff developed shortness of breath after one-half mile of walking at a regular pace and after climbing one flight of stairs. Tr. 158-59. A pulmonary function test revealed a diagnosis of minimal chronic obstructive airway disease. A chest x-ray revealed minimal bilateral bullous emphysema. Tr. 160-61.

In September 2006 plaintiff was admitted to Christus St. Francis Cabrini Hospital with spontaneous pneumothorax on the right and a chest tube was inserted. Tr. 187-88. During this hospital stay he was additionally diagnosed with hypertension and diabetes mellitus. Tr. 189-90.

In January 2007 plaintiff was again admitted to Christus St. Francis Cabrini Hospital with a 30% pneumothorax on the right and bilateral apical bullae. Tr. 185. A right apical blebectomy surgery was performed by Dr. Chance DeWitt. Tr. 203.

In November 2008 plaintiff underwent an evaluation for sleep apnea. His complaints at the time included moderate snoring, tired during the day, frequent awakening, night sweats, restlessness, leg cramps, and muscle aches. Tr. 207. The results of the testing indicated that he suffered from severe obstructive sleep apnea associated with moderate aterial oxygen desaturation and periodic limb movement disorder with possible restless leg syndrome. Tr. 208-09.

In April 2009 plaintiff was seen by Dr. Hussein Alammar for a consultative examination. Following the examination, the doctor's impression was that plaintiff suffered from bullous emphysema, history of spontaneous pneumothorax, post right thoracotomy with blebectomy, diabetes mellitus type 2, hypertension, obstructive sleep apnea, and visual disturbance. He concluded that there was no clinical evidence of complications from diabetes or hypertension. He opined that plaintiff's main problem was emphysema and noted that he became short of breath after ambulating in the room for a few minutes. He recommended a pulmonary function test and chest x-ray and EKG. Tr. 227-29.

The results from a chest x-ray taken in May 2009 show plaintiff suffered from COPD, a possible left upper lobe infected bullae, and chronic right pleural thickening. Tr. 257. A CT scan taken the same month indicated left pulmonary bullae complicated by infection or chronic inflammatory conditions. Tr. 272. A pulmonary function study conducted on May 20, 2009, showed at least moderate airflow obstruction and possible underlying restriction or significant air trapping. Tr. 327-29. On May 20, 2009, he was seen by Dr. Alexander Slatkin who noted that

the CT and chest x-ray showed fluid levels in the left upper lobe bullae and diagnosed an infection. Plaintiff was treated with antibiotics and advised to return for follow up. Follow up exams indicated that the infection cleared. Tr. 282-84, 289.

Plaintiff underwent a residual function capacity assessment on April 30, 2009. The results showed that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, could stand or walk for 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday. Additionally, plaintiff must avoid exposure to fumes, odors, dusts, gases and poor ventilation. Tr. 233-40.

In June 2009 plaintiff underwent an examination at the VA Medical Center. The doctors determined that plaintiff's physical problems had a significant effect on his occupational activities such as lifting and carrying, lack of stamina, weakness or fatigue, and decreased strength in his upper and lower extremities. The diagnosis found his physical problems moderately affected his usual daily activities such as chores, shopping, and exercise and prevented his ability to engage in sports. Finally, it was a determined that plaintiff's problems mildly affect his ability to engage in recreation and travel. Tr. 300.

On September 18, 2009 the Department of Veterans Affairs found plaintiff to be 100% disabled based on his examination at the VA medical Center in June 2009 and his diagnosis of emphysema, bronchitis, COPD, post right pneumothorax, thoracotomy and blebectomy. Tr. 340-42.

A letter from one of plaintiff's physicians, Dr. Hanna Lubbos, dated February 2, 2010, indicates that plaintiff suffered from complications from a history of uncontrolled diabetes. He noted that plaintiff had blurry vision, peripheral neuropathy, continuous pain in his lower extremities and an unsteady gait. He wrote that plaintiff's hypertension and sleep apnea leave

him tired and fatigued most of the day and that his multiple health problems seem to make him unable to maintain his job. Tr. 353.

## STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## LAW AND ANALYSIS

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The claimant must show that he or she is unable to engage in a work activity "involving significant physical or mental abilities for pay or profit." *Id.* (citing 20 C.F.R. § 404.1572(a)-(b)). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[1]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "'Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding.'" *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

---

[1] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

  If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)). Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p. The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p. The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here the ALJ found that plaintiff was not disabled at step four of the sequential analysis. Specifically the ALJ found "[t]he claimant is capable of performing past relevant work as a gaming inspector. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565)." Tr. 13.

In his appeal plaintiff argues that the Commissioner erred in (1) failing "to weigh or consider the opinion of two of [plaintiff's] treating sources"; (2) failing "to give proper consideration to the VA's determination that [plaintiff] is 100% disabled"; (3) assessing

"[plaintiff's] residual functional capacity"; and (4) "finding that [plaintiff] can return to work as a gaming inspector." Doc. 8, pp. 4-5.

### 1. Did the Commissioner err in failing to weigh or consider the opinion of two of plaintiff's treating physicians?

Plaintiff argues that the ALJ failed to weigh, consider or even mention the opinion of Dr. Hanna Lubbos dated February 10, 1010 and the report of plaintiff's treating physicians at the VA Medical Center dated June 12, 2009. Plaintiff argues that this is clear reversible error citing *Newton v Apfel,* 209 F.3d 448 (5th Cir.2000) and 20 C.F.R. § 404.1527(d)(2)(i-ii).

In response, the Commissioner argues that the ALJ was not required to consider the §404.1527(d) factors with regard to any opinion from Dr Lubbos regarding plaintiff's ability to return to work. The Commissioner further maintains that the remainder of Dr. Lubbos's opinion does not deserve much weight since it was provided in a letter addressed "[t]o whom it may concern" and submitted by plaintiff a few weeks before his administrative hearing. Doc. 9, p. 5. As to plaintiff's claim that the ALJ did not consider the report from his doctors at the VA Medical Center, the Commissioner states that "[w]hile the ALJ did not expressly mention the June 12, 1009 VA report, the ALJ discussed Plaintiff's treatment at the VA medical center." Doc. 9, p. 5. The Commissioner maintains that the ALJ adequately addressed the medical evidence in the case and cites to references in the decision where the ALJ mentions VA treatment such as plaintiff's May 20, 2009 pulmonary function test.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ is bound by the "treating physician rule," which generally requires the ALJ to give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians. *Blakely v Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir.2009). The ALJ must give a treating physician's opinion "controlling weight if it is 'well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence' ". *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir.1995) (quoting 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion may be given little or no weight "when the evidence supports a contrary conclusion". *Newton v. Apfel,* 209 F.3d 445 (5th Cir.2000). The ALJ must "always give good reasons ... for the weight [it affords the opinion]", 20 C.F.R. § 404.1527(d)(2), and must show good cause when giving that opinion little or no weight. *Newton,* 209 F.3d at 455.

Pursuant to § 404.1527(d)(2), to determine how much weight to afford such an opinion, the ALJ must consider: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *See also id.* at 456. Furthermore, Social Security Ruling (SSR) 96-2p provides:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527.

Dr Hanna Lubbos who treated plaintiff "for almost one year" opined that plaintiff suffered from blurry vision, peripheral neuropathy causing continuous pain in his lower extremities, unsteady gait, hypertension, hyperlipidemia and severe sleep apnea which left him fatigued most of the day. He noted that plaintiff also suffered with COPD but this was well controlled by medication. Tr. 353. Plaintiff's VA doctors performed the June 12, 2009 examination specifically to determine if plaintiff was entitled to disability from the Department of Veterans Affairs. That report indicated, among other things, that plaintiff's physical problems

had a significant effect on occupational activities, a moderate effect on his usual daily activities and a mild effect on his ability to engage in recreation and travel. Tr. 300.

Here, the ALJ's decision never mentioned the opinion of Dr. Hanna Lubbos dated February 2, 2010 or the report of plaintiff's treating physicians at the VA Medical Center dated June 12, 2009. The ALJ provided no guidance whatsoever on whether he gave any weight to either of these pieces of evidence submitted by plaintiff. As stated above, the ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of plaintiff's treating physicians. An ALJ may reject the opinion of a treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)". *Newton,* 209 F.3d at 453.

The ALJ specifically relies on the opinion evidence of the state agency medical examiner, Dr. Hussein Alammar in reaching his conclusion that plaintiff had the RFC to perform a modified range of light work; however, nowhere in his decision does the ALJ give any indication that he rejected or even considered the opinion of Dr. Hanna Lubbos or that of the physicians at the VA Medical Center.

In sum, the requisite "detailed analysis" for the § 404.1527(d) factors is lacking and should be conducted on remand.

**2. Did the Commissioner err in failing to give proper consideration to the VA's determination that plaintiff was 100% disabled?**

Plaintiff contends that the ALJ's decision failed to mention the September 18, 2009, report by the Department of Veterans Affairs which found plaintiff to be 100% disabled. He argues that under SSR 06-03p "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Doc. 8, p. 7. Plaintiff additionally cites the Fifth Circuit case of *Chamblis v Massanari,* 269 F.3d 520, 522 (5th Cir.

2001) which found that although not legally binding in social security hearings, a VA disability rating in most cases is entitled to great weight and must be considered by the ALJ.

The Commissioner asserts that the ALJ acknowledged that plaintiff receives VA benefits and that despite the VA rating, the record as a whole supports the ALJ's decision that plaintiff had the RFC to perform his past work.  Doc. 9, pp. 6-7.

A Veterans Administration rating of total and permanent disability, while not legally binding on the Commissioner because the two agencies apply different criteria, is evidence that is entitled to a certain amount of weight and must be considered by the ALJ.  *Barraza v Barnhart,* 61 F. App'x 917 (5th Cir.2003) (citing *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir.2001)).  The Fifth Circuit has stated,

> …we have sometimes referred to a VA disability determination as being entitled to "great weight."  While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case.  Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

*Chambliss,* 269 F.3d at 522.

The record in the instant case, demonstrates that the ALJ noted that plaintiff received monthly benefits from the VA [tr. 12] but the ALJ never mentioned the Department of Veterans Affairs September 18, 2009 report assessing plaintiff with 100% disability.  Based on the above cited authority, this is clear error and this matter should be remanded for such consideration.

### 3. Did the Commissioner err in assessing plaintiff's residual function capacity?

Plaintiff claims that the ALJ's decision that he can perform modified light work is flawed because he failed to consider certain evidence.  In particular, he argues that if the ALJ had properly considered evidence of plaintiff's peripheral neuropathy in both legs, fatigue from

severe obstructive sleep apnea diabetes, and frequent blurry vision he would have imposed a more restrictive RFC and a finding of disability.

The Commissioner maintains that substantial evidence in the record supports the ALJ's assessment. The Commissioner points to evidence in the record which demonstrates plaintiff suffered from only a moderate airflow restriction and that his COPD was controlled on medication. Additionally, the state medical examiner found that plaintiff had no complications from either diabetes or hypertension, had a normal gait and normal walking, had a normal heart rhythm, and that plaintiff's chest was symmetrical and moving equally. The Commissioner further maintains that plaintiff failed to meet his burden of proving that his sleep apnea was a severe impairment.

This court's review of the decision of the ALJ is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Where the decision is supported by substantial evidence, the findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Since we have found that the ALJ failed to properly consider evidence of two of plaintiff's treating physicians and the VA disability rating, we cannot conclude that substantial evidence supports his assessment of plaintiff's RFC. This matter must be remanded in order for further consideration.

**4. Did the Commissioner err in finding that plaintiff could return to his past relevant work as a gaming inspector?**

Plaintiff maintains that the ALJ's finding that plaintiff could return to his past work as a gaming inspector is not supported by the evidence. In his RFC assessment, the ALJ found that "the claimant must avoid concentrated exposure to fumes, odors, dusts and gases. He must work

in a well ventilated area." Tr. 11. Plaintiff argues that his work as a gaming inspector necessarily exposes him to poor air quality. Plaintiff cites a study conducted by the Coalition for a Tobacco-Free Louisiana in which it was determined that one casino in the Baton Rouge area had "unhealthy air quality."[2] Plaintiff argues that there is no evidence in the record to support the ALJ's finding that the job of gaming inspector "would not expose the claimant to any concentrated fumes." Rather, plaintiff maintains that his return to this former position would expose him to unhealthy levels of cigarette smoke.

The Commissioner notes that in his application materials plaintiff reported that his work as a gaming inspector involved observing and reporting gaming activities such as money exchange, food preparations, general health, operational deliveries and casino policies. At the hearing plaintiff testified that he "observed all the money exchanging and health issues, food inspecting regularly. We inspected the food as it came in and how it was served, how it was prepared …the proper dress code, hairnets, that kind of stuff." Tr. 25. Thus, the Commissioner maintains that his description of his past work does not indicate that he would be performing his duties on the casino floor where he might encounter cigarette smoke. The Commissioner argues, citing *Hollis v. Bowen,* 837 F.2d 1378, 1386 (5th Cir.1986), that plaintiff failed to meet his burden of proving that he cannot return to his past relevant work.

Social Security ruling (SSR) 82-61 provides that a claimant will be found "not disabled" when it is determined that he retains the RFC to perform (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.

As explained in SSR 82-62,

---

[2]http://tobaccofreeliving.org/home5/section/announcement_view/622/, Doc. 8, p. 10.

> Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work. …
>
> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit. …
>
> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.

In finding that plaintiff could return to his past relevant work as actually performed, the ALJ concluded, "the claimant reported in the capacity of a gaming inspector he lifted less than 10 pounds. He sat 4 hours a day. He supervised employees. The undersigned finds this job would not expose the claimant to any concentrated fumes." Tr. 13.

The record before the court fails to establish if plaintiff's return to his position as a gaming inspector would expose him to unhealthy concentrations of "fumes, odors, dusts or gases" that could have a detrimental effect on his impairments. There is no evidence of whether or not plaintiff's prior position required that he work on the casino floor which would inevitably expose him to cigarette smoking. We find that the ALJ failed to secure evidence that resolves

this issue as "clearly and explicitly as circumstances permit," SSR 82-62, and for these reasons recommend that the matter be remanded for such consideration.

## CONCLUSION

For the reasons stated,

IT IS RECOMMENDED that the decision of the ALJ be VACATED and the case REMANDED for further consideration in accordance with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 24th day of November, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE